## L. B. THOMPSON *v.* S. B. and W. M. LAWRENCE.

1. TAX SALE. *Requisites of deed.* It is essential to the validity of a deed from a revenue collector that it should show affirmatively, not only that a sale of the land was in fact made, but that it was at the time and at the place required by the Statute. And where the recitals of the deed show that the sale was had on the day required by law, this will constitute only *prima facie* evidence of the fact.

   Cases cited: Henderson *v.* Starritt, 4 Sneed, 472; Conrad *v.* Darden, 4 Yer., 308.

   Code cited: §§ 620, 612.

   Statutes cited: 1844, ch. 92, § 1; 1835, ch. 15, §§ 8, 4.

2. SAME. *Same.* If land be reported for condemnation to the Circuit Court of the same year for which the taxes are due, under these

circumstances the Court will have no jurisdiction to render judgment in such case under the Act of 1835, § 4 and 8; Code, § 612, *et seq.*

## FROM DEKALB.

Appeal from the Chancery Court.    B. M. TILL-MAN, Judge.

JOHN H. SAVAGE for Thompson.

J. B. ROBINSON for Lawrence *et al.*

DEADERICK, J., delivered the opinion of the Court.

The bill in this case was filed in the Chancery Court of DeKalb County, on the 20th of February, 1867. This bill alleges that James Kager was the owner of a certain tract of land in Warren, now DeKalb, County, granted by the State to him in 1838, by grant No. 6314, and describing the land as lying on Link Creek, of about 400 acres; that in 1840 James Kager sold this tract with others, and that W. P. Lawrence, the ancestor of defendants, obtained one of the notes given for the purchase-money, and filed his bill to subject the land to the payment of the purchase-money, in the Chancery Court at Mc-Minnville. That the case was taken to the Supreme Court, and a lien declared and the land sold for its satisfaction, and purchased by said W. P. Lawrence; that said W. P. Lawrence afterwards died, and devised said lands to defendants, and that they had

brought an action of ejectment against complainant in the Circuit Court of DeKalb County, to recover the lands.

It further alleges that plaintiffs in the ejectment suits had never had possession of said lands, and that the same had been sold twelve or thirteen years before for unpaid taxes; that the land was reported by the revenue collector for unpaid taxes due the State and County, in the name of James Kager, and was condemned by the Circuit Court of DeKalb County, and ordered to be sold therefor, and that the same was thereafter duly advertised and sold according to the provisions of the Statute, and was purchased by one Womack, as the agent of said James Kager; and that Kager, who was his father-in-law, afterwards conveyed the land to complainant; that the record of the sale and return of the tax collector has been lost or destroyed, and his defence is thereby embarrassed at law, and asks the aid of a Chancery Court to set up and establish said lost record, and prays for an injunction to prohibit the prosecution of the action of ejectment, until the hearing of the bill; and upon final hearing that the title of complainant be declared valid under the tax sale, and defendants perpetually enjoined from prosecuting their action of ejectment.

Complainant claims that, as agent of Kager, he has claimed and exercised acts of ownership over the land ever since the purchase at the tax sale.

27—vol. 2.

It appears that the land in controversy was directed to be sold by a decree of this Court at its December term, 1845, and that the same was sold, and W. P. Lawrence became the purchaser, and the sale was confirmed and the title vested in the purchaser at the December term, 1846, and ordering possession to be given to said W. P. Lawrence.

Defendants answered the bill, and set up their title as devisees of their father; deny any knowledge of the sale of the land for taxes, or any possession or occupancy of the land by complainant or James Kager, or other person, in hostility to their right, and require strict proof, etc.

Complainant files an imperfect transcript of proceedings of the DeKalb Circuit Court which shows that Joseph Atnip, Revenue Collector, at the April term, 1854, reported to said Court certain lands to be condemned and sold for taxes due thereon for the year 1853. Then follows the report:

"I, Joseph Atnip, Revenue Collector of the public taxes of DeKalb County, do hereby report to Court the following tracts of land, town lots and parts of town lots, as having been given in for taxes for the year 1853; that the taxes thereon remain due and unpaid, and the respective owners or claimants thereof have no goods or chattels within my county on which I can distrain for said taxes, to-wit:

L. B. Thomas *v.* S. R. and W. M. Lawrence.

"James Kager, 400 acres of land, in district No. 7, valued at $200; tax 47 cents.

"JOSEPH ATNIP, R. C.
Of DeKalb County."

"Subscribed and sworn in open Court, April 21, 1854.    J. B. TUBB, Clerk." ·

Then follows the judgment of the Court, directing the lands to be sold as the law directs. As far as the record of the Circuit Court discloses, no further or other proceedings were had. The Clerk certifies that after diligent search no record of the issuance of an order of sale, or report of sale can be found in his office.

As a record, therefore, these proceedings are wholly insufficient to sustain the validity of the tax sale, nor is there any parol or other evidence in the record sufficient to authorize this Court to supply the lost or destroyed record of the proceedings which are alleged to have constituted a part of the record of the proceedings in the tax sale.

It is, however, insisted that the recitals in a deed on file from the revenue collector, the successor to Atnip, to complainant under the Act of 1844, ch. 92, § 1, are *prima facie*, sufficient for the purpose.

As before stated, Kager conveyed his right under this purchase, at the alleged tax sale, to his son-in-law, the complainant. This was done by a quit claim deed, bearing date January 1, 1867. This deed being exhibited to Eli Vick, Revenue Collector of DeKalb County, he executed to Thompson, on the

1st of September, 1868, the deed upon which he now relies· to support his title to the land.

If the bill in this case could derive support from the collector's deed, it would be only because the Act of 1844 makes it *prima facie* evidence, under certain circumstances, that the land sold lies in the county in which it has been reported for non-payment of taxes; that it has been duly reported that the sale was ordered and advertised.

The deed was executed in 1868 by a successor of the collector, who reported the land, and more than fifteen years after it was so reported, according to its recitals, and more than a year after complainant filed his bill. When the land was sold does not appear. The deed recites that "Joseph Atnip, Revenue Collector, after advertising the land according to law, on the —— day of ———, 18—, sold said land," etc.

The Act of 1835, ch. 15, Sec. 8 and 4, requires that the sale "shall be made at the Court-house of the county wherein the land shall be situated, on the first Monday of July, and succeeding day or days, if necessary, in each and every year," for the taxes due for the preceding year or years. §§ 4, 8.

This provision is retained in Code, § 620.

It is essential to the validity of a deed from a revenue ·collector that it should show affirmatively, not ·only that a sale of the land was in fact made, but that it was made at the time and at the place required by the Statute.

L. B. Thomas *v.* S. R. and W. M. Lawrence.

In the case of *Conrad* v. *Darden*, 4 Yer., 308, where a tax sale was made in July, the Act of 1819, then in force, requiring it to be made first Monday in November, it was held, the sale being unauthorized, that the deed was void.

In this case, the sale is not stated to have been made on any day, month or year. If the recitals in the deed had been that the sale was made on the day required by law, this would have been but *prima facie* evidence of the fact according to the case of *Henderson* v. *Starritt*, 4 Sneed, 472.

But here all the evidence we have of a sale is, the recital in the deed that the land was sold on the —— day of ——, 18—. This, we think, is wholly insufficient.

This deed further recites that Atnip, Collector of public taxes for the County of DeKalb, and State of Tennessee, for the year 1853, returned the following report of lands to be condemned and sold for the taxes due thereon, to the April term of the Circuit Court of DeKalb County, Tennessee, for the year 1853, to-wit:

"James Kager, 400 acres of land in district No. 7, valued at $200; tax 47 cents.

"And whereas, the said Court did, at its April term, 1853, aforesaid, condemn said land to be sold, for the taxes accrued thereon," etc.

The Revenue Collector was not authorized to report lands for condemnation for taxes of 1853, to the April or any other term of the Circuit Court in

1853. The Act of 1835, §§ 4 and 8, authorizes such report only as to the taxes due for preceding years; and the Court had no jurisdiction to render judgments or order sales of land under such circumstances. Code, § 612, *et seq.*

To whatever extent, therefore, the deed is taken as evidence, it applies to taxes of 1853, it is fatally defective in its recitals, and shows that the Circuit Court had no jurisdiction to render a judgment for taxes of 1853.

Relying on the imperfect record of the Circuit Court, we have not even *prima facie* evidence of advertisement or sale.

The decree of the Chancellor must be reversed, and the bill dismissed at complainant's cost.